UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEATREPID INTERNATIONAL, LLC | CIVIL ACTION |
| VERSUS | NO. 13-51 |
| MK SALVAGE VENTURE, LLC, ET AL | SECTION "N" (5) |

**ORDER AND REASONS**

Before the Court are the following motions:  (1) a Motion for Partial Summary Judgment (Rec. Doc. 22), filed by defendant-in-counterclaim, SeaTrepid International, LLC ("SeaTrepid"); and (2) a Motion to Transfer Venue (Rec. Doc. 28), filed by MK Salvage Venture, LLC ("MK Salvage"), MK Pacific, LLC, and Bear Trading Enterprises, LLC.

**I. BACKGROUND:**

This dispute relates to certain remote operated vehicles (ROVs) provided by SeaTrepid International, LLC, a Louisiana underwater engineering firm, to assist in a salvage operation on a shipwreck site off the coast of Juneau, Alaska.  SeaTrepid filed suit in the Twenty-First Judicial District Court, Parish of Tangipahoa, against three Washington-based companies (MK Salvage,  MK Pacific, and Bear Trading), as well as an Alaska resident (Michelle Ridgeway) and her solely-owned business (Oceanus Alaska).  SeaTrepid alleges that the defendants: (1) breached a written lease agreement (for the lease of one Mohawk ROV) (the "Mohawk Lease"), (2) breached an oral lease agreement (for two Outland ROVs); (3) breached certain other oral and email agreements (*e.g.*, to use only a qualified ROV pilot, to pay for the two lost Outland

ROVs, and to pay for a SeaTrepid technician mobilized to the site); (4) negligently caused the loss of the two Outland ROVs; and (5) converted the salvaged Outland ROV (the other Outland ROV was not recovered). Defendants MK Salvage, MK Pacific, and Bear Trading removed the case to this Court on the bases of diversity and admiralty jurisdiction. (Rec. Docs. 1, 7). MK Salvage has filed a counterclaim against Seatrepid alleging that the Mohawk ROV was not in full working condition on delivery and was never brought to full working condition, causing MK Salvage to sustain damages for 17 days of lost search time. Rec. Doc. 14.

**II. MOTION FOR PARTIAL SUMMARY JUDGMENT:**

SeaTrepid seeks summary judgment dismissing MK Salvage's counterclaim "for any damages is excess of $15,000.00 (subject to setoff in favor of SeaTrepid)." SeaTrepid relies on the following provision contained in the Mohawk Lease:

> EXCEPT FOR THE FOREGOING WARRANTY OF TITLE, SEATREPID INTERNATIONAL, LLC MAKES NO WARRANTIES OR REPRESENTATIONS WHATSOEVER. SEATREPID INTERNATIONAL, LLC'S WARRANTY OF TITLE SET FORTH IN THIS PARAGRAPH IS EXCLUSIVE. LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES ALL OTHER WARRANTIES OF SEATREPID INTERNATIONAL, LLC AND RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING BY LAW, OR OTHERWISE, WITH RESPECT TO THE EQUIPMENT OR THIS AGREEMENT, INCLUDING WITHOUT LIMITATION (A) ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE (B) ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, AND (C) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO THE EQUIPMENT FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO THE EQUIPMENT FOR ANY LIABILITY OF LESSEE TO ANY THIRD PARTY, OR FOR ANY OTHER DIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES. LESSEE'S REMEDY IN CASE OF ANY BREACH OF THIS AGREEMENT BY SEATREPID INTERNATIONAL LLC IS LIMITED TO THE RETURN OF THE EQUIPMENT TO SEATREPID INTERNATIONAL, LLC AND CANCELLATION OF THIS AGREEMENT.

Rec. Doc. 22-4 at 4 (uppercase font in original). Based on this waiver clause, SeaTrepid argues that even if SeaTrepid did fail to provide a Mohawk ROV in operable condition, MK Salvage's relief is limited to return of its $15,000 deposit. Elsewhere, the Mohawk Lease states that "SeaTrepid guarantees that Mohawk ROV and Hylek Manipulator shall be provided in full working condition." *Id.* at 3. However, SeaTrepid expressly asks the Court to carve out all other parts of the waiver clause and look only at the language dealing with damages. MK Salvage argues that the motion is premature (as the case is in its infancy, with no pretrial deadlines set and no depositions taken) and essentially asks for an advisory opinion, ruling on what the remedy might be without regard to the underlying facts of liability.

There are cases where it is appropriate to grant summary judgment on an issue of remedy prior to deciding liability (*e.g.*, where a plaintiff seeks a remedy that is absolutely foreclosed as a matter of law regardless of what liability facts the plaintiff ultimately may be able to prove). However, this is not such a case. Here, the movant has failed to establish that it is entitled to judgment as a matter of law on the issue of remedy regardless of what the facts prove to be. While contractual limitations on liability are generally enforceable under Louisiana law, there are exceptions. For example, a "clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." La. Civ. Code art. 2004. This provision has been applied to invalidate limitations on liability in contracts between commercial parties where a breach of warranty allegedly entailing gross negligence resulted in property damage and consequential damages. *See Occidental Chemical Corp. v. Elliott Turbomachinery Co., Inc.,* 84 F.3d 172 (5th Cir. 1995). Louisiana courts have also refused to enforce contractual limitations of liability where the breaching party's conduct amounted to "a

deliberate disregard of a contractual duty." *See Carriage Meat Co., Inc. v. Honeywell, Inc.,* 442 So.2d 796, 798 (La. Ct. App. 4th Cir. 1983); *see also G.C.P. Telephone Cards LLC v. ADT Security Services, Inc.,* 2011 WL 2118732 (E.D. La. 2011) (McNamara, J.). Thus, it is not the case that the waiver clause is *per se* enforceable regardless of what facts are established concerning liability. Consequently, in this case, it would be inappropriate to issue summary judgment at this early juncture on the issue of damages without giving the plaintiff-in-counterclaim an opportunity to conduct discovery on the underlying facts.

### III. MOTION TO TRANSFER:

Defendants MK Salvage, MK Pacific, and Bear Trading seek to transfer this case pursuant to 28 U.S.C. § 1404(a) to the District of Alaska, where the district court has been overseeing the salvage operation for which the ROVs in this case were supplied. *See Yukon Recovery Inc., et al v. Certain Abandoned Property, et al*, No. 96-cv-270 (D. Alaska). The parties agree that the proper standard for deciding such motions is that which is set forth in *In re Fema Trailer Formaldehyde Products Liability Litigation,* 2009 WL 4723138 *1 (E.D. La. 2009):

> The decision of whether to transfer a case pursuant to 28 U.S.C. § 1404(a) is committed to the sound discretion of the district court. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989). The trial court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3847, at 370 (1986). A threshold consideration for the Court is if the plaintiff could have initially brought the action in the transferee court. *Hoffman v. Blaski*, 363 U.S. 335, 343–44...(1960). In determining whether transfer is proper under 28 U.S.C. § 1404(a), courts consider both private interest (affecting the convenience of the litigants) and public interest factors (affecting the convenience of the forum). *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241...(1981). The private

> interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagon AG*, 371 F.3d 201, 203 (5th 2004) (citing *Piper Aircraft*, 454 U.S. at 241 n. 6....
>
> The public interest factors to be considered include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Finally, while "neither conclusive nor determinative", in the Fifth Circuit "the plaintiff's choice of forum is clearly a factor to be considered." *In re Horseshoe Entm't*, 337 F.3d 429, 434–35 (5th Cir.2003). The plaintiff's choice of forum places a "good cause" burden on the defendant who seeks the transfer... *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.2008). This "good cause" burden is met when the moving party can "satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Id*.

*Id.* at *1. SeaTrepid relies heavily on the forum selection clause contained in the Mohawk Lease, which provides:

> The Parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Tangipahoa Parish, Louisiana.

Rec. Doc. 22-4 at 5. Because the Court has found the transfer motion lacking at this juncture for other reasons, as discussed below, it need not decide today the precise scope and weight to be given this clause. However, the Court notes that the clause closely resembles those found by the Fifth Circuit to be permissive clauses, which do no more than subject the parties to jurisdiction and venue in the stated forum, but not to the exclusion of other possible forums. *See Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127-28 (5th Cir. 1994); *Keaty v. Freeport Indonesia, Inc.*,

5

503 F.2d 955, 956-57 (5th Cir.1974)  (finding clause to be permissive, which provided:  "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York.").  Such a clause would be entitled to much less weight in a section 1404(a) analysis than a clause whereby the parties had clearly agreed to one exclusive forum.  Moreover, the clause here almost certainly does not encompass all of the claims and parties in the case.  If this motion is re-urged at a later date, supported by a more fleshed-out description of what discovery and trial in this case will actually entail, then these issues may become determinative.  Today, they are not.

     Although it is clear that events underlying the claims in this case occurred in Alaska, it is not clear at this juncture who the necessary witnesses will be or where they reside.  (The parties have named a handful of witnesses, but this analysis requires the Court to balance the convenience of the parties and witnesses as a whole.).  Nor is it clear that significant physical evidence is located in Alaska.   While the district court in Alaska has been overseeing the salvage operation, the defendants concede that they are not seeking transfer on the basis of relatedness, and it remains unclear whether the matters under seal in the Alaska case will have any bearing on this litigation.

     For all of these reasons, the Court finds the defendants have not clearly established at this time that the convenience of the parties and witnesses warrant transfer.   Because these private interest factors are the core of the required inquiry, the Court finds that the motion should be denied without prejudice.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment **(Rec. Doc. 22)** and the Motion to Transfer Venue **(Rec. Doc. 28)** filed by MK Salvage are both **DENIED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 5th day of August, 2013.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**